UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.

ANTHONY CHASE,

   Plaintiff,

vs.

NOVA SOUTHEASTERN UNIVERSITY, INC., a Florida, not-for-profit corporation,

   Defendant.
_____/

**Complaint for Damages and Other Relief — Jury Trial Demanded**

Plaintiff, Anthony Chase, sues defendant, Nova Southeastern University, Inc., and shows:

## Introduction and Summary

1. This is a perceived-disability discrimination/breach-of-contract action by a law school professor whom Nova Southeastern University, Inc. fired — notwithstanding that he had been awarded lifetime tenure in 1985 — because the President of the university falsely perceived him as being mentally ill. He sues pursuant to the Americans with Disabilities Act and the Florida Civil Rights Act of 1992, as well as for breach of contract under common law. Chase seeks injunctive relief, damages (including punitive damages), attorney's fees and litigation expenses.

**Jurisdiction, Venue and Parties**

2.      This is an action arising under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101.  Jurisdiction is founded on 28 U.S.C. § 1331, 42 U.S.C. § 2000e-5(f)(3) and 42 U.S.C. 12117(a).  The court has jurisdiction to grant declaratory and further relief pursuant to 28 U.S.C. §§ 2201 and 2202 and also to entertain plaintiff's state law claim pursuant to 28 U.S.C. § 1367.

3.      Venue is proper in the Northern Division of the Southern District of Florida, pursuant to 28 U.S.C. § 1391 (b)(1) and (2) because the events and omissions giving rise to the claims occurred in Davie, FL, where plaintiff Chase was employed.

4.      Plaintiff, Anthony Chase, at all times material was a tenured full professor at Nova Southeastern University, Inc.'s Shepard Broad Law Center.  As an "employee" as envisioned by 42 U.S.C. § 12111(4), a "qualified individual" as envisioned by 43 U.S.C. § 12111(8), and an "aggrieved person" as envisioned by § 760.02(3), FLA. STAT. (2011), Chase is protected by the anti-discrimination provisions of the Americans with Disabilities Act, 42 U.S.C. § 12010, et seq., and the anti-handicap-discrimination provisions of the Florida Civil Rights Act of 1992, § 760.10(1), FLA. STAT. (2011).

5.      Defendant, Nova Southeastern University, Inc. ("Nova") is a Florida not-for-profit corporation with its principal place of business in Davie, Florida.  It is an "employer" as envisioned by 42 U.S.C. § 12111(5)(a) (as

well as by § 760.02(2), FLA. STAT. (2011)), and, hence, a "covered entity" as envistioned by 42 U.S.C. § 12111(2).

## Applicable Statutes

6. The Americans with Disabilities Act ("ADA") provides in pertinent part at 42 U.S.C. § 12112 ("Discrimination"):

> (a) General rule. No covered entity shall discriminate against a qualified individual on the basis of disability in regard to … discharge of employees…
>
> (b) Construction. As used in subsection (a), the term "discriminate against a qualified individual on the basis of disability" includes —
>
> (1) limiting, segregating, or classifying a[n] … employee in a way that adversely affects the opportunities or status of such … employee because of the disability of such applicant or employee;
>
> \*     \*     \*
>
> (3) utilizing standards, criteria, or methods of administration —
>
>> (A) that have the effect of discrimination on the basis of disability; …

7. The ADA defines "qualified individual" at 42 U.S.C. § 12111(8), in pertinent part, as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.…"

8. The ADA at 42 U.S.C. § 12102 ("Definition of disability") defines:

> a. "disability," in pertinent part, as:
>
> (1) [W]ith respect to an individual —

>> (A) a physical or mental impairment that substantially limits one or more major life activities of such individual;
>
> [or]
>
> (C) being regarded as having such an impairment … ;

     b.    "Major life activities," in pertinent part, as including "thinking … and working";

     c.    "Regarded as having such an impairment," in pertinent part, as being the situation that exists "if the individual establishes that he or she has been subjected to an action prohibited under this Act because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity."

     9.    The Florida Civil Rights Act of 1992 provides, in pertinent part, at § 760.10(1), FLA. STAT.:

> It is an unlawful employment practice for an employer:
>
> (a) To discharge or … or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's … handicap….
>
> (b) To limit, segregate, or classify employees … in any way which would deprive or tend to deprive any individual of employment opportunities, or adversely affect any individual's status as an employee, because of such individual's … handicap ….

### General Allegations

     10.    Nova opened its law school in 1974, and by 1975 had obtained accreditation by the American Bar Association — which accreditation was necessary if its law graduates were to be allowed to take the Florida bar examination.

11. At the time, the ABA conditioned accreditation on, among other things, having tenure for law-school professors to ensure their academic freedom: faculty tenure remains today a requirement for ABA accreditation.

12. Nova has tenure for its law school faculty only because of the ABA accreditation requirement; no other school at Nova has tenured faculty.

13. Nova describes the "purpose" of tenure in the section of its law-school faculty handbook concerning "Initial Contract, Retention, Promotion, and Tenure: [Full Time] Faculty":

> It is the intention of this institution to pursue a policy of tenure that will attract the best of those individuals who, by their lifetime relationship, will be a credit to and bring honor upon the Law Center. It is recognized and expected that thereafter, in exchange for the job security inherent to the tenure contract, the faculty member will be unencumbered in making a total commitment to perfecting his/her professional stature by advancing the development of the law at a state or national level through teaching, scholarship and service. Although it may take years to achieve this stature, tenure is awarded to those individuals who have demonstrated the capability of making a sustained effort toward achieving this goal.

14. That same section of the law-school handbook describes the "Procedure" and "Standards" for obtaining tenure as follows:

   a. Procedure:

   > Tenure shall be granted to an academic faculty member who, after a maximum of six years as a full-time tenure-track law school teacher has met the standards prescribed herein. Individuals eligible to apply for tenure shall be those who hold the rank of Associate or Full Professor of Law, regardless of their assigned duties (e.g., law librarian or administrator). Adjunct, lecturer, instructor, visiting, and long-term-contract teaching positions are not eligible for tenure.
   >
   > A faculty member with more than three (3) years regular teaching service at one or more other law schools may, by contract

provision at the time of his or her initial appointment, be given a probationary period of not more than four (4) years, even though thereby the person's total probationary period at all law schools is extended beyond the normal maximum of seven (7) years.

A faculty member with regular teaching experience at the Law Center in a contract-line position may, by contract provision at the time of his or her initial appointment, be given a probationary period that reflects prior service. That individual's probationary period shall not be less than two years nor more than the normal maximum of seven (7) years.

A tenure-track faculty member who is not awarded tenure in his/her sixth year of full-time tenure-track law teaching shall be notified by the Administration not later than May 30 of the sixth year of the termination of his/her employment at the Law Center as of the end of the seventh year. Tenure may be awarded prior to the sixth year at the Law Center upon application in the fifth year or when granted by initial contract. Tenure decisions should be made during the Fall semester.

    b.    Standards:

A faculty member shall be granted tenure if he/she demonstrates successful teaching, scholarship and service that indicate it is in the Law Center's best interest to grant tenure. Successful teaching shall be shown by demonstration of continued progress and growth since the third year review. Successful scholarship means continual, regular production of quality publications, reflecting the predicted growth and development from the faculty member's first piece, indicating realization of his/her potential. Successful service means active participation in Law Center governance and involvement in local, state or national organizations in the areas of the faculty member's expertise and interests.

A positive tenure vote would include a recommendation to the Dean and Trustees that the faculty member, if not already a Full Professor, be promoted to Full Professor.

15.    Chase joined the Nova law school faculty in 1979 and was awarded tenure and promotion to full professor based on a unanimous vote of the faculty in 1985.

16. There is a mechanism outlined in Nova's university-wide Faculty Policy Manual for terminating non-tenured faculty members throughout the university who are employed either as probationary employees or under either annual or continuing contracts.

17. No mechanism exists, however, for the termination of a tenured faculty member.

18. George Hanbury II, the president of Nova, nonetheless placed Chase on administrative leave October 7, 2010, and terminated him by a letter dated December 8, alleging that remarks that Chase had made to several fellow faculty members about firearms had "created a well-founded fear by the University for the safety of its entire University community."

19. The statements were contained or reference in e-mails appended to the termination letter, which statements were:

    a. in an August 31, 2010 e-mail exchange with Professor Phyllis Coleman — expressing irritation with what Chase perceived as harassment from the facilities manager concerning books that Chase had stored on faculty floor, as well as exasperation with a statement by the law school's dean that he had no control over the behavior of facilities management staff — that "I have acquired a large Beretta handgun and I take my 'how to shoot' course Tuesday or Thursday morning of this week….";

    b. in a September 27-29 e-mail chain, in Chase's portion of which there was no mention of any firearm, but in which Professor Michael

Flynn asked in a P.S. to his response, "Tony, do you really have a concealed weapons permit and carry a gun to school or keep it in your truck or are you just considering such an option?," and Professor Kathy L. Cerminara added, "I also hope that you 'neither' have a gun at school or in your truck 'nor' plan on getting a concealed weapons permit to do so";

        c.    in a September 29 e-mail to Professors Cerminara, Flynn, Joel Mintz, Kathy, Catherine Arcabasao, Michael Dale and Joseph Hnylka — generally griping about law school governance and commenting on the determination by the a National Labor Relations Board administrative judge that Nova was violating federal labor laws in connection with its opposition to an organizational campaign by the Service Employees International Union — that

> I own a registered Beretta 8000 (which is legal in Florida), have a carry permit (which is legal in Florida), and have been trained to use it (which is also legal of course).  My maintenance and use of this weapon and its possession conforms to all federal and state laws, and to the rules and regulations of my employer.  It is the university that is comfortable with violating the law, not me….

        d.    in an October 4 e-mail to Catherine Arcabascio, a professor and associate dean (with whom Chase had discussed a seminar during which the lead FBI investigator on the Beltway Sniper case discussed how during the pendency of the case, he would zig-zag as he ran through the FBI parking lot to his car) that

> I will see you on Tuesday but I may not be here until late since whenever I move anything out of my office as part of the packing job I have to do it at night. Just trying to avoid being shot. I can shoot pretty good from the windows into the parking lot.  Hopefully, I will be here

earlier Wednesday, when I do not have class. Bob Dylan is Wednesday night. I am thinking of asking [M. P.]. It will obviously be a big date night.

20. Chase's being placed on leave and subsequently terminated followed:

 a. Chase's being summarily summoned from a class that he was teaching to visit the office of Dean Athornia Steele, who told Chase that Nova security personnel wished to search his office and truck and determine if he had a firearm on campus, and that he would be allowed to return to teaching if the searches turned up nothing — which they did;

 b. Chase's computer being combed by Nova personnel;

 c. Chase's being questioned during two lengthy interrogations by Thomas Panza, Nova's lawyer, concerning Chase's visits to web-sites involving pornography and school shootings — two areas concerning which Chase has historically taught and done research that was sponsored and financed by Nova, recommended by the relevant faculty committee, and approved by both the dean of the law school and the Nova administration.

21. At the same time that it terminated Chase from his tenured professorship, Nova also issued Chase a statutory trespass warning, threatening to have him arrested if he set foot on Nova property, and stating that

> Given the circumstances leading to the termination of your employment, as well as concerns raised by various members of the faculty and administration during the course of our investigation, we believe it best, in the interest of the safety of the campus, that you not be on university property….

## Count I/Discrimination Under Americans with Disabilities Act

22.     Chase realleges and adopts, as if they were fully set forth in Count I, the allegations of ¶¶ 1-8, 15, and 18-21.

23.     The "well-founded fear by the University for the safety of its entire University community" cited by Hanbury in his termination letter, as well as the "concerns raised by various members of the faculty and administration during the course of our investigation," cited in the letter conveying the trespass warning, evidence a perception by Nova of Chase as being disabled — i.e., as being mentally deranged enough to engage in a campus shooting rampage.

24.     The perception is founded on no actions of Chase, who was not found to possess any firearms on campus, and who informed Nova that he actually possessed neither a concealed-weapons permit nor even a firearm — although both would be legal for him to have in Florida.

25.     Nova thus terminated Chase, a qualified individual, because it perceived him as suffering a mental disability that interferes with the major life activities of thinking and working.

26.     Chase's termination was, therefore, in violation of the ADA.

27.     As a direct, natural, and proximate result of Nova's wrongful termination of Chase, Chase has suffered damages, included but not limited to lost wages and loss of earning capacity.

28.    Chase additionally is suffering irreparable harm by being deprived of his federal statutory right against discrimination because Nova regards him as being mentally disabled, for which there is no adequate remedy at law.

29.    Chase is entitled to recover his reasonable attorney's fees and litigation expenses pursuant to 42 U.S.C. §§ 2000e-5(k) and 12117(a).

WHEREFORE, plaintiff Anthony Chase respectfully requests this Court to enter judgment for him, and against defendant Nova Southeastern University:

**One**, determining and declaring that Nova's termination of Chase (and its issuance of a trespass warning), are in violation of Chase's rights under the ADA;

**Two**, enjoining Nova, both preliminarily and permanently, against discriminating against Chase because it incorrectly regards him as being mentally ill, and affirmatively to make him whole by restoring him to his former employment, with all seniority and benefits;

**Three**, granting judgment against Nova for damages, including for punitive damages;

**Four**, awarding Chase his attorney's fees and litigation expenses; and

**Five**, granting such other and further relief as is just.

### Count II/Discrimination Under Florida Civil Rights Act of 1992

30.    Chase realleges and adopts, as if they were fully set forth in Count II, the allegations of ¶¶ 1-5, 9, 15, 18-21, and 23-24.

31.     Nova has thus terminated Chase, a qualified individual, because it perceives him as suffering the handicap of mental illness.

32.     Chase's termination was, therefore, in violation of the FCRA.

33.     As a direct, natural, and proximate result of Nova's wrongful termination of Chase, Chase has suffered damages, included but not limited to lost wages, loss of earning capacity, mental anguish, loss of dignity, and any other intangible injuries, and punitive damages.

34.     Chase additionally is suffering irreparable harm by being deprived of his Florida statutory right against discrimination because Nova regards him as being mentally disabled, for which there is no adequate remedy at law.

35.     Chase is entitled to recover his reasonable attorney's fees and litigation expenses pursuant to § 760.11(5).

WHEREFORE, plaintiff Anthony Chase respectfully requests this Court to enter judgment for him, and against defendant Nova Southeastern University:

**One**, determining and declaring that Nova's termination of Chase (and its issuance of a trespass warning), are in violation of Chase's rights under the FCRA;

**Two**, enjoining Nova, both preliminarily and permanently, against discriminating against Chase because it incorrectly regards him as being mentally ill, and affirmatively to make him whole by restoring him to his former employment, with all seniority and benefits;

*Three*, granting judgment against Nova for damages, including for punitive damages;

*Four*, awarding Chase his attorney's fees and litigation expenses; and

*Five*, granting such other and further relief as is just.

### Count III/Declaratory and Injunctive Relief

36.     Chase realleges and adopts, as if they were fully set forth in Count III, the allegations of ¶¶ 1-5 and 10-21.

37.     There is controversy and disagreement between Chase and Nova as to what Chase believes is his right as a tenured faculty member of the law school not to be fired from the lifetime employment that he was promised when he joined the faculty as a tenure-track assistant professor in 1979 and that he was guaranteed when he was awarded tenure in 1985.

38.     As a direct, natural and proximate result of Nova's termination of Chase, he is being irreparably harmed, i.e., being denied the unique position enjoyed by a tenured professor of law, which employment provides for:

    a.     a prestige demonstrably unique in the legal and academic communities;

    b.     a platform for subsidized scholarship;

    c.     a stature that is conducive to attaining publication of scholarly works; and

    d.     an opportunity to interact with law students, and thereby to shape the profession for decades to come.

39.     Chase has no full, adequate or complete remedy at law.

40. Alternatively, should the Court find that Nova's breach of Chase's contract for lifetime employment is not amenable to injunctive relief, the breach is the proximate cause of damages, including but not limited to lost wages, loss of future earning capacity, and loss of the enjoyment of being a tenured legal scholar.

WHEREFORE, plaintiff, Anthony Chase, prays that this court will determine and declare that:

*One*, Nova's termination of Chase is a breach of his contract, as a tenured professor of law, for lifetime employment;

*Two*, that such breach creates irreparable harm, remediable only by the restoration of Chase as a professor of law at Nova, along with a make-whole award of back pay; or, alternatively,

*Three*, that Chase is entitled to recover damages, to be determined by a jury, for the breach of his contract for lifetime employment, and for the termination of his career as a legal scholar.

Chase also prays that this Court will award him his costs in this action, and will grant such other and further relief as is just.

## Demand for Jury Trial

Plaintiff, Anthony Chase, demands trial by jury on all issues so triable.

Respectfully submitted,

_____
WILLIAM R. AMLONG
Florida Bar No: 470228
WRAmlong@TheAmlongFirm.com
KAREN COOLMAN AMLONG
Florida Bar No: 275565
KAmlong@TheAmlongFirm.com
ERIC FARMELANT
Florida Bar No: 84161
EFarmelant@TheAmlongFirm.com

AMLONG & AMLONG, P.A.
500 Northeast Fourth Street
Second Floor
Fort Lauderdale, Florida 33301-1154
(954) 462-1983

*Attorneys for the Plaintiff,*
*Anthony Chase*

\\amlong3\cpshare\CPWin\HISTORY\110517_0001\1148.26