UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-61290-CIV-COHN/SELTZER

ANTHONY CHASE,

      Plaintiff,

vs.


NOVA SOUTHEASTERN UNIVERSITY, INC.,

      Defendant.

_____/

ORDER ON DEFENDANT'S MOTION TO COMPEL
PLAINTIFF'S EXECUTION OF A MEDICAL AUTHORIZATION

THIS CAUSE is before the Court on Defendant's Motion to Compel Plaintiff's Execution of a Medical Authorization (DE 55) and the Court being sufficiently advised, it is hereby ORDERED that the Motion is DENIED for the reasons set forth below.

Defendant moves the Court to compel Plaintiff to execute medical releases so that it may obtain Plaintiff's medical records from David Rooney, M.D., Plaintiff's longtime psychiatrist,[1] and Glenn R. Caddy, Ph.D, a psychologist who Plaintiff has retained as an expert witness.[2] Defendant, however, has not cited any authority that would permit this

---

[1] Plaintiff represents that Plaintiff has been under the care of Dr. Rooney since 2001, at which time Dr. Rooney diagnosed Plaintiff as suffering from both depression and anxiety. According to Plaintiff, he is not contending that any symptoms associated with either of these conditions has worsened since Defendant's termination of his employment.

[2] According to Plaintiff, Dr. Caddy possesses no treatment records of Plaintiff and Dr. Caddy has not reviewed any of Dr. Rooney's treatment records. Plaintiff represents that Dr. Caddy will not be testifying as a damages witness, but rather will be testifying as an expert as to what Defendant should have done; his task is to "assess the inference to be drawn from [Nova's] president's 'well founded fear [for the safety of the university community]' statement and to explain what the proper protocol would [be] to determine whether Chase posed a danger." Response at 7 (DE 55). Plaintiff further represents that

Court to grant the requested relief.  The Eleventh Circuit has not directly addressed the issue of whether a court possesses the authority to require a plaintiff to execute a medical release.  District courts, however, are split on the issue, as noted in Morris v. City of Colorado Springs, No. 09-cv-01506-PAB-MEH, 2009 WL 4927618, at *2 (D. Colo. Dec. 18, 2009):

> A review of cases addressing whether a court may order production of executed medical releases reveals a split of authority.  The first view primarily looks to the plain language of Rule 34 to conclude that records not in a party's possession may not be compelled and that Rule 34 does not permit the Court to order the party's signature on a medical release form.  The second view generally permits an order compelling a signature or a release form when the party placed his or her medical condition at issue in the case.  However, even courts that compel authorizations from the plaintiff typically require the defendant first to seek the documents directly from the third party who has custody of the document.[3]

Id. (citations omitted) (footnote added); see also, Graham v. S Carroll, No. 5-10-cv-65-RS-GRJ, 2011 WL 855331, at *2 (N.D. Fla. Mar. 9, 2011) (discussing cases on both sides of the issue and finding that no Federal Rule of Civil Procedure nor any "other recognized

---

Dr. Caddy's entire file will be made available to Defendant as part of his expert disclosures. Defendant questions Plaintiff's representation that Dr. Caddy has no treatment records, citing to Plaintiff's deposition testimony that he had seen Dr. Caddy "about a half dozen times" for two to three hours sessions and that Dr. Caddy was helping him to "think through this whole period and why I might say some things to colleagues that were not typical or not characteristic." Pl. Depo. at 96, Ex. A to Reply (DE 58).  For purposes of this Motion, the Court will assume that Dr. Caddy has treated Plaintiff.

[3] See EEOC v. Thorman & Wright Corp., 243 F.R.D. 426, 429 (D. Kan. 2007) ("It is only after the individuals or entities object on grounds of privilege or otherwise fail to produce documents pursuant to a subpoena that the Court will consider a motion requesting: (1) the Court to compel the entity to produce the documents pursuant to Rule 45; or (2) compel the party to execute appropriate releases pursuant to the Court's own general powers to enforce its own orders.")

authority" empowers a court to order a party to sign a medical release).

This Court agrees with the courts that have ruled that they do not possess the authority to routinely require a plaintiff to execute a release for medical records. See, e.g., Graham, 2011 WL 855331, at *1-2; Fields v. West Virginia State Police, 264 F.R.D. 260, 261-63 (S.D. W. Va. 2010); Morris, 2009 WL 4927618, at *2.

But even were the Court to conclude that it had such authority, it would decline to compel Plaintiff to execute the medical releases in this case.  Plaintiff argues that both Dr. Rooney's and Dr. Caddy's records are protected by the psychotherapist-patient privilege. Although no federal statute or federal rule expressly protects psychotherapist records from disclosure, in Jaffee v. Redmond, 518 U.S. 1 (1996), the Supreme Court held that "confidential communications between a licensed psychotherapist and her patients in the course of diagnosis and treatment are protected from compelled disclosure under Rule 501 of the Federal Rules of Evidence."  Id. at 15 (concluding that the federal common law psychotherapist-patient privilege applied to a party's communications with social worker during the course of psychotherapeutic counseling).  The Court recognized that "[l]ike the spousal and attorney-client privileges, the psychotherapist-patient privilege is rooted in the imperative need for confidence and trust."  Id, at 10.  The Jaffee Court further noted that the psychotherapist-patient privilege can be waived, although it did not decide what would constitute a waiver.  Id. at 15 n.14.

Since the Supreme Court decided Jaffee, most courts have held that a party waives the psychotherapeutic-patient privilege by placing his or her mental condition at issue.  See Gaines-Hanna v. Farmington Pub. Sch., No. 04-CV-74910-DT, 2006 WL 932074, at *8 (E.D. Mich. April 7, 2006) ("Case law is clear that a party waives the federal common law

3

psychotherapist-patient privilege by placing his or her mental condition at issue."). The courts, however, have not reached a consensus as to when a party's mental condition has been placed at issue. In the instant case, Defendant first argues that Plaintiff has placed his mental condition at issue by bringing a disability claim alleging discrimination related to mental illness. More specifically, Defendant argues that "to establish a prima-facie cause under the [ADA], the Plaintiff must show that (1) he has a disability; (2) he is a qualified individual; and (3) the Defendant unlawfully discriminated against him because of his disability. An individual is considered disabled if he is regarded as having a physical or mental impairment that substantially limits one or more life activities." Motion at 3-4 (DE 3-4) (citations omitted). According to Defendant, "[s]ince the Plaintiff must establish that he is regarded as disabled and his alleged disability is 'mental illness,' he has placed his mental condition directly at issue and therefore waives any psychotherapist/patient privilege." Id. at 4.

The ADA decisions upon which Defendant rely, however, do not support its argument. In Sarko v. Penn-Del Directory, Co., 170 F.R.D. 27 (E.D. Pa. 1997), the defendant terminated the plaintiff's employment, allegedly because of chronic tardiness. The plaintiff contended that she "suffered from clinical depression requiring medication, that this medication caused her difficulty waking up in the morning, that Defendant was aware of her condition, and that, despite her request for a reasonable accommodation of this condition, Defendant unlawfully fired her." Id. at 129.

The Sarko court noted:

> Plaintiff must establish as the first element of her prima facie case of unlawful discrimination that she belongs to a protected category under the ADA. The ADA protects three categories of

4

"qualified individuals with a disability," 42 U.S.C. § 12112(a), by defining disability as

(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

(B) a record of such an impairment; or

(C) being regarded as having such an impairment.

42 U.S.C. § 12102(2).

Id. at 130.  In Sarko, the plaintiff claimed that she was a member of all three protected categories by virtue of her clinical depression.  The court there concluded that the plaintiff had waived the psychotherapist-patient privilege because she had placed her mental condition [clinical depression] directly at issue, "at least with respect to her claims that she belongs to the first two protected categories [i.e, having a mental impairment and a record of such impairment]."  Id. (emphasis added).  Notably, the court did not find that the plaintiff had placed her mental condition at issue by virtue of the third category – "being regarded as having [a mental] impairment]."

Similarly, in Wynne v. Loyola Univ., No. 97 cv 06417, 1999 U.S. Dist LEXIS 14723 (N.D. Ill. Aug. 30, 1999), the plaintiff alleged that she suffered from a mental impairment – major depression.  In finding that she had placed her mental condition at issue, thereby waiving the psychotherapist-patient privilege, the Wynne Court concluded that "the exact parameters of the plaintiff's condition are at the very heart of plaintiff's case. The degree to which she suffers from depression, the extent of the depression, the duration of the same, all are relevant to a determination of disability under the [ADA]."  Id. at *4.

Unlike the plaintiffs in Sarko and Wynne, Plaintiff here is not alleging that he suffers

5

from a mental impairment; rather, he is contending that Defendant perceived him as suffering from a mental impairment and discharged because of that perception. Whether or not Defendant's alleged perception is accurate – that is, whether or not Plaintiff does, in fact, have a mental illness – is not relevant. This Court, therefore, concludes that Plaintiff has not waived the psychotherapist-patient privilege simply by bringing this ADA action.

Although not raised by Defendant, the Court nonetheless notes that the Complaint seeks damages for, *inter alia*, "mental anguish." See Complaint ¶ 33 (DE 1). Plaintiff contends that he is seeking damages for only "garden-variety" mental anguish and that a party may seek recovery for mental anguish without necessarily placing his mental condition in controversy. The court in Fitzgerald v. Cassil, 216 F.R.D. 632 (N.D. Cal. 2003), explained the differing approaches to waiver by a litigant in these circumstances:

> On the one end of the spectrum there is a broad approach to waiver. Under the broad approach, courts have held that a simple allegation of emotional distress in a complaint constitutes waiver. See Sarko v. Penn-Del Directory Co., 170 F.R.D. 127 (E.D. Penn. 1997); Doe v. City of Chula Vista, 196 F.R.D. 562 (S.D. Cal. 1999). Under the narrow approach, at the other end of the spectrum, courts have held there must be an affirmative reliance on the psychotherapist communications before the privilege will be deemed waived. See Vanderbilt v. Town of Chilmark, 174 F.R.D. 225 (D. Mass. 1997); Hucko v. City of Oak Forest, 185 F.R.D. 526 (N.D. Ill. 1999).
>
> * * *
>
> There is a middle ground between the Sarko and Vanderbilt lines of cases. See 3-504 Weinstein's Federal Evidence § 504.07[8] & n. 22.4 (discussing "limited" broad view of waiver). Under this approach, courts have generally found a waiver when the plaintiff has done more than allege "garden-variety" emotional distress. Garden-variety emotional distress has been described by one court as "ordinary or commonplace

6

emotional distress," that which is "simple or usual".[4]   In contrast, emotional distress that is not garden variety "may be complex, such as that resulting in a specific psychiatric disorder." <u>Ruhlmann v. Ulster County Dep't of Soc. Servs.</u>, 194 F.R.D. 445, 449 n. 6 (N.D.N.Y. 2000).

<u>Id.</u> at 636-37 (footnote omitted and footnote added) (adopting narrow approach).

The Eleventh Circuit has not addressed waiver of the psychotherapist-patient privilege.  The majority of district courts considering the issue, however, have adopted the middle position, holding that a party does not place his or her mental condition at issue merely by alleging emotional distress and/or mental anguish.  <u>See</u> <u>Ortiz-Carballo v. Ellspermann</u>, No. 5:08-cv-165-Oc-10GRJ, 2009 WL 961131, at *2 (M.D. Fla. Apr. 7, 2009) ("The majority of federal courts that have addressed the issue have held that a party does not place his mental condition in controversy merely by requesting damages for mental anguish or 'garden variety' emotional distress."); <u>Stevenson v. Stanley Bostitch, Inc.</u>, 201 F.R.D. 551, 553 (N.D. Ga. 2001) ("The majority of courts have held that plaintiffs do not place their mental condition in controversy merely by claiming damages for mental anguish or 'garden variety' emotional distress.").  This Court agrees with the majority that the middle position is the proper approach to deciding whether a party has waived the psychotherapist-patient privilege.  As one district court in the Eleventh Circuit has explained: "This approach is sound because it appropriately considers the importance of the psychotherapist-patient privilege and its purpose of promoting successful psychiatric

---

[4] Another court has characterized garden-variety claims for emotional distress and mental anguish as "claims of generalized insult, hurt feelings, and lingering resentment" that "do not involve a significant disruption of the plaintiff's work life and rarely involve more than a temporary disruption of the claimant's personal life." <u>Javeed v. Covenant Med. Cir., Inc.</u>, 218 F.R.D. 178, 179 (N.D. Iowa 2001).

treatment by encouraging confidence and trust within the psychotherapist-patient relationship. It also gives the plaintiff, as master of his Complaint, clear guidance on what claims or allegations will operate to waive the privilege." Dominguez-Silva v. Harvey, No. Civ.3:04-CV-135-JTC, 2006 WL 826091, at *1 n.1 (N.D. Ga. Mar. 23, 2006).

In determining whether a party's mental condition is "at issue" (thereby waiving the psychotherapist-patient privilege), this Court finds instructive those decisions addressing whether a party's mental condition is "in controversy," thereby permitting a Rule 35(a) mental examination. See id. (in determining whether the psychotherapist-patient privilege has been waived, "many courts draw guidance from the analogous line of cases analyzing when a party has placed his metal condition 'at issue' for purposes of ordering a Rule 35(a) mental examination."); Stevenson, 201 F.R.D. at 557 ("[D]etermining whether the plaintiff has placed her mental condition at issue so as to waive the [psychotherapist-patient] privilege is analogous to, and should be generally consistent with, the analysis conducted when a Rule 35(a) examination is requested."). These Rule 35 cases have identified various conditions under which a plaintiff's mental condition may be placed "in controversy": (1) stating a tort claim for intentional or negligent infliction of emotional distress; (2) alleging a specific mental or psychiatric injury or disorder; (3) alleging unusually severe emotional distress; (4) intending to offer expert testimony to support a claim for emotional distress damages; and/or (5) conceding that his or her mental condition is in controversy. See, e.g., Ortiz v. Potter, No. 2:08-cv-01326 LKK KJN, 2010 WL 796960, at *2-3 (E.D. Cal. Mar. 5, 2010) ("The Turner rule adequately balances the intended liberal construction of Rule 35 in favor of granting examinations . . . with the right of the party to be examined to avoid unnecessary personal invasions.") (discussing seminal case of

8

Turner v. Imperial Stores, 161 F.R.D. 89 (S.D. Cal. 1995)); see also Jarrar v. Harris, No. CV 07-3299(CBA)(JO), 2008 WL 2946000, at *3-4 (E.D.N.Y July 25, 2008) (applying Turner analysis); Gaines-Hanna, 2006 WL 932074, at *8-9.

Applying these factors to the instant case, the Court does not find that Plaintiff has waived the psychotherapist-patient privilege by seeking damages for mental anguish. Plaintiff has not brought a claim for intentional or negligent infliction of emotional distress, nor does he contend that he suffers from a mental or psychiatric disorder.  Moreover, as noted above, Plaintiff is not contending that his prior depression and anxiety was exacerbated by Defendant's termination of his employment.   And Plaintiff has not conceded (indeed, he disputes) that his medical condition is "in controversy" or "at issue." Additionally, Plaintiff represents that neither Dr. Rooney nor Dr. Caddy will not be called as a damages witness.

In sum, the Court concludes that the Federal Rules of Civil Procedure do not authorize compelling Plaintiff to execute medical releases under the circumstances of this case.  Furthermore,  even were the Rules to authorize such compulsion, the Court would conclude that the medical records sought by Defendant are protected from disclosure by

9

the (federal common law) psychotherapist-patient privilege, which privilege Plaintiff has not waived.

DONE AND ORDERED in Fort Lauderdale, Florida, this 29th day of May 2012.


_____
BARRY S. SELTZER
CHIEF UNITED STATES MAGISTRATE JUDGE



Copies to:

All counsel of record